UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TINA MICHELLE BRAUNSTEIN,

                Plaintiff,

      -against-

DAVID BARBER and BLUE HILL AT STONE
BARNS, LLC,

               Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

06 Civ. 5978 (CS) (GAY)

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

Tina Michelle Braunstein brings this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-17) and the New York Human Rights Law (N.Y. Exec. Law §§ 290-300). Plaintiff Braunstein asserts these claims against defendants David Barber and Blue Hill at Stone Barns, LLC for allegedly harassing and discriminating against her because she is a woman, and retaliating against her when she complained internally of said acts.[1] Presently before this Court are defendants' motion to dismiss plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), on the grounds that plaintiff failed to state claims for which relief can be granted. For the reasons that follow, I respectfully recommend that defendants' motions be DENIED.

---

[1] To the extent plaintiff alleges that defendants retaliated against her in subsequent employment after she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), plaintiff filed a separate lawsuit to address this claim on March 22, 2007. Braunstein v. Barber, No. 07 Civ. 3391 (S.D.N.Y.). On November 7, 2007, District Judge Charles L. Brieant ordered said case dismissed with prejudice by stipulation and agreement of the parties. Id., Docket No. 15.

### I.  BACKGROUND

The following facts are gathered from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.  Any disputes of material fact are noted.

Plaintiff is female bartender who, at the time she commenced the instant action, resided in the Bronx, New York.   Blue Hill at Stone Barns, LLC ("Blue Hill") is a "three-star" restaurant located in Pocantico Hills, Westchester County, New York.  David Barber is an owner of Blue Hill.  On January 24, 2004, plaintiff interviewed for a bartending position to work at the "front of the house" bar at Blue Hill.  Philippe Gouze, Blue Hill's general manager, conducted plaintiff's interview.  Gouze hired plaintiff and she began training on March 29, 2004.  On this day, plaintiff received Blue Hill's employee handbook and server's manual.  The employee handbook included information regarding Blue Hill's discrimination policies and procedures.  The server's manual, among other things, required that servers convey a hospitable attitude towards customers.

Plaintiff's duties included requiring her to be knowledgeable about the wines Blue Hill served.  As part of this duty, plaintiff took wine quizzes administered by Blue Hill's sommelier, Derrick Todd ("Todd").  Additionally, plaintiff served drinks and food to customers at the bar and lounge in the front of the restaurant.  Defendants contend that plaintiff was also required to maintain and clean these areas, re-stock alcohol, and handle all cash transactions.  Plaintiff asserts that when she was hired, Gouze

2

represented that she would have assistance from a barback who would assist her in stocking alcohol, glassware, and ice; and clear away dirty dishes.  Plaintiff also asserts that the restaurant barista was to provide assistance at both the front and service bars.

Contrary to plaintiff's understanding, she contends that did not receive help from either a barback or the restaurant barista.  Defendants assert that plaintiff did seek and sometimes received help from other managers and co-workers.  Nonetheless, plaintiff alleges that she suggested to Gouze that service could be improved in her work area if she had assistance clearing dishes and Blue Hill hired a cocktail waitress for the lounge. Plaintiff alleges that Gouze reacted hostilely to her suggestions and said to her, "You are a terrible bartender.  I can put one man up here who could bartend for the full establishment."  Defendants' Ex. B, Braunstein Tr. 237:18-21.

The relationship between Gouze and plaintiff deteriorated.  Defendants contend that plaintiff was unwilling or unable to discharge her job duties.  Defendants allege that plaintiff often disappeared from the bar.  Defendants also allege that Blue Hill received complaints from customers regarding plaintiff's rudeness.  On the contrary, plaintiff contends that customers often praised her service and she was only aware of a single negative comment from a customer prior to her termination.  Furthermore, plaintiff alleges that Gouze's poor treatment of her began because she received public attention for her service.  Specifically, notable New York Times critic Frank Bruni mentioned plaintiff's name three times in his July 28, 2004 review of Blue Hill, Elizabeth Johnson commented on plaintiff's rhubarb cosmopolitan in a May 4, 2004 Journal News article of Blue Hill, and Martha Stewart called on plaintiff in late August/early September to provide a mojito recipe and then personally thanked her for said recipe.  Plaintiff alleges

3

that Gouze regularly called her a "diva" and "bitch" as early as April or May of 2004, but said that such occurrences became more frequent after the Bruni review.

Plaintiff alleges that in early October, she spoke with David Barber about how Gouze treated her.  She alleges that she told Barber that Gouze harassed her.   Plaintiff asserts that she also said that Gouze called her a "bitch" and "diva."  She contends further that she told Barber that Gouze said to her that he could put a man at the front bar and lounge to do a better job.  Plaintiff alleges that she explained to Barber that the situation made her "really uncomfortable."  Plaintiff alleges that Barber promised to take care of the situation.  Plaintiff also alleges that Gouze saw her speaking with Barber. Plaintiff further alleges that, around the same time, she spoke with Irene Hamburger, Vice President of Operations at Blue Hill, about the alleged harassment.

On October 13, 2004, Gouze and plaintiff had an altercation surrounding plaintiff's refusal to take a wine quiz from Todd.  Plaintiff alleges that she requested that she take the quiz at another time in order to allow her time to prepare the bar and lounge prior to the restaurant opening for the evening.  Allegedly, Todd denied plaintiff's request and reported to Gouze.  Plaintiff alleges that Gouze asked her to join him in the restaurant's private dining room whereupon he told her that she had no choice about when to take the wine quiz.  Gouze subsequently sent plaintiff home, allegedly telling her to "get the fuck out" of the restaurant and calling her a "real bitch."  Plaintiff contends that Gouze did not give her an opportunity to explain her position and denied her pay for the time she had already worked.

The next day, October 14, 2004, plaintiff arrived early for her shift to attend a wine tasting.  Plaintiff asserts that she spoke with Barber about being sent home the

4

night before.  She alleges that she told Barber that Gouze called her a "bitch" and "diva."  She also alleges that Barber instructed her to "work it out" with Gouze.  Plaintiff contends that she did speak to Gouze later that day.  She alleges that Gouze said, "Tina, I don't like you.  You are a real diva.  You are a real egoist."  Subsequently, on October 15, 2004, plaintiff called Barber.  She contends that she reaffirmed to him that she was concerned Gouze's harassment would continue.  Plaintiff asserts that Barber again reassured her that he would take care of the situation.

On November 14, 2004, Gouze terminated plaintiff.  That evening plaintiff covered the service and front bar because Chris, the service bartender, did not show up to work.  Allegedly, a couple in the front lounge became irate because of slow service.  Plaintiff alleges that she sought Gouze's assistance, but he ignored her.  Plaintiff contends that she tried to take the couple's order, but they instead chose to leave Blue Hill.  Plaintiff alleges that another customer complimented plaintiff's handling of the situation to another Blue Hill employee, Claire.  Plaintiff also alleges that she advised Gouze's assistant, John List, of the situation and he told her not to worry about it.  Nonetheless, Gouze approached plaintiff at around 9:00 p.m. and brought her to the coat check room.  Plaintiff alleges that Gouze said, "That's it.  I'm letting you go." Plaintiff contends that although she tried to speak with Gouze, he was non-responsive.  She asserts that Gouze again called her a "bitch" and said she was "bitchy to customers."

Following plaintiff's termination, Blue Hill hired a man to bartend at the front bar and lounge.  Blue Hill also hired a cocktail waitress to serve customers in the lounge.

Plaintiff first filed a complaint with the EEOC on September 8, 2005.  The EEOC dismissed plaintiff's complaint and provided her with her "Right to Sue" letter, which plaintiff received on April 8, 2006.  Plaintiff commenced this action on July 5, 2006 when she filed a complaint with the pro se office of the clerk of the court.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  When deciding a summary judgment motion, the Court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo, 22 F.3d at 1224.  Summary judgment must be denied, therefore, if the

court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts must therefore "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Id. Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." Id.

## III.  STATUTE OF LIMITATIONS FOR TITLE VII CLAIMS

In order to pursue a timely claim pursuant to Title VII, a plaintiff must file her

7

complaint within ninety (90) days of receiving a "Right to Sue" letter from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  However, "where in forma pauperis relief is granted, the action should be treated as timely, provided the complaint was received by the clerk's office prior to the expiration of the limitations period."  Toliver v. Sullivan County, 841 F.2d 41, 42 (2d Cir. 1988).  In the instant matter, plaintiff received from the EEOC her "Right to Sue" letter on April 8, 2006.  Plaintiff filed her complaint and application to proceed in forma pauperis with the pro se office of the clerk of the court on July 5, 2006, at the latest, when said office stamped her papers as "received."  Defendants admit that this date falls within plaintiff's ninety-day limitations period.  The undersigned granted plaintiff's application for the appointment of counsel on November 9, 2006.

Thus, the fact that plaintiff's complaint was filed with the Court on August 31, 2006, about one month beyond the ninety-day period, is not controlling.  She timely filed the complaint with the pro se office along with her application to proceed in forma pauperis.  As such, it is respectfully recommended that defendants' motion for summary judgment with respect to plaintiff being procedurally time-barred should be DENIED.

## IV.  SEXUAL HARASSMENT CLAIM

Plaintiff claims that she was subjected to hostile environment sexual harassment on the basis of Gouze's actions and defendants' failure to correct the situation.  Specifically, plaintiff alleges that Gouze called her a "bitch" and  "diva," and although she allegedly complained to defendant Barber, he failed to correct the situation.  Plaintiff also alleges that Gouze called her other names, such as "egoist," which on their face appear gender neutral, but under the totality of the circumstances, evidence the hostile work environment.  Plaintiff alleges that Gouze called her these derogatory terms until

8

he terminated her on November 14, 2004.  Defendants contend that Gouze's name-calling occurred in isolated incidents which would not give rise to a hostile environment sexual harassment claim.  Defendants further contend that Gouze's use of said words described her attitude and was gender-neutral.  Defendants also assert that plaintiff failed to submit evidence establishing that the workplace was objectively hostile.  Finally defendants assert that plaintiff's claim is barred because she failed to utilize the complaint procedure detailed in Blue Hill's anti-harassment policy.

Individuals may not be held liable for violations of Title VII.  Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995).  Accordingly, here, plaintiff may only bring a sexual harassment claim against defendant Blue Hill.  In order to succeed on her claim, plaintiff must demonstrate "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation omitted) (alteration in original).  As to the first element, plaintiff must show that the workplace was both objectively and subjectively hostile.  See id.  Further, "[s]ingle or isolated instances of misconduct do not rise to the level of pervasiveness unless, taken separately or together, they are so extraordinarily severe or sufficiently continuous and concerted as to have altered the working environment."  Durant v. A.C.S. State and Local Solutions, Inc., 460 F. Supp. 2d 492, 497 (S.D.N.Y. 2006).

In determining whether a plaintiff has established a hostile work environment claim, courts will weigh the totality of the circumstances and consider various factors

9

"including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  See Dawson v. County of Westchester, 373 F.3d 265, 272-73 (2d Cir. 2004) (internal quotation and citation omitted).  In sum, "[t]he question of whether a work environment is sufficiently hostile to violate Title VII is one of fact . . . [and] [s]ummary judgment is appropriate only if it can be concluded as a matter of law that no rational juror could view [the defendant's conduct] as . . . an intolerable alteration of [the plaintiff's] working conditions."  Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001) (internal quotation and citations omitted).

In the present case, plaintiff alleges that Gouze created a hostile work environment in violation of Title VII's sexual harassment prohibition when he repeatedly called her a "bitch" and "diva," and said that one man could do her job better.  Plaintiff alleges that Gouze began saying that one man could do her job in May of 2004. Plaintiff articulates two specific occasions when Gouze called her said names, when he: (1) sent her home for allegedly refusing to take a wine quiz on October 13, 2004, and (2) terminated her on November 14, 2004.  Moreover, plaintiff contends that Gouze called her a "bitch" consistently since the Bruni review of July 28, 2004, and "dozens" of times in September and through October 13, 2004.  Plaintiff's Ex. 1, Braunstein Tr. 299:18-300:21.  Gouze admits to calling Braunstein a "bitch" and "diva" on October 13, 2004 and November 14, 2004.  Plaintiff's Ex. 2, Gouze Tr. 159:8-160:25.  Gouze also admits that using the term "bitch" was inappropriate.  Id. at 160:9-15.  He further testified that it was not a word he used against a man.  Id.  160:19-21.  Plaintiff allegedly

complained to Barber about Gouze's treatment of her at least three times.  See infra §
VI.

Using the term "bitch" can be construed as sex-based harassment.  Macri v.
Newburgh Enlarged City Sch. Dist., No. 01 Civ. 1670, 2004 WL 1277990, at *9
(S.D.N.Y. June 8, 2004).  Furthermore, "[w]hen a female plaintiff has been the target of
sex-based insults and, unlike her male coworkers, is later subjected to additional"
gender-neutral abuse, "it may be reasonable to infer that any further mistreatment is
also sex-based."  Id. at *10.  However, in light of plaintiff's and Gouze's testimony, a
question of fact remains regarding whether Gouze's conduct was so frequent, severe,
or pervasive to establish that plaintiff suffered an "'an objectively hostile or abusive work
environment.'"  Payami v. City of New York, No. 03 Civ. 2785, 2007 WL 945529, at *5
(S.D.N.Y. March 28, 2007) (quoting Patterson v. County of Oneida, 375 F.3d 206, 227
(2d Cir. 2004).  Furthermore, "reasonable jurors could disagree as to whether alleged
incidents of . . . harassment would have adversely altered [plaintiff's] working
conditions."  Id. at *6.  As such, a question of fact exists as to whether Gouze's acts
amounted to discriminatory intimidation.  Thererfore, the Court cannot conclude as a
matter of law that Gouze's name-calling was nothing more than offensive utterances.
See Holtz, 258 F.3d at 75.

Finally, Gouze's conduct can be imputed to Blue Hill.  See Faragher v. City of
Boca Raton, 524 U.S. 775, 807 (1998) (where a supervisor with immediate authority
over plaintiff created the actionable hostile environment, the employer is subject to
vicarious liability).  Nonetheless, defendants appear to assert a Faragher affirmative
defense, alleging that plaintiff did not follow Blue Hill's harassment policy.  However,

11

said defense is not available.  See id. at 807-08.  Defendants may not assert the affirmative defense "when the supervisor's harassment culminates in a tangible employment action, such as discharge . . . ."  Id. at 808.  Here, no one disputes that Gouze terminated plaintiff.  Furthermore, Gouze admits that he called plaintiff a "bitch" and "diva" when he fired her.  Plaintiff's Ex. 2, Gouze Tr. 160:22-25.  Therefore the Faragher affirmative defense is not available.

For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motion should be DENIED.

## V.  GENDER DISCRIMINATION CLAIM

Plaintiff claims that Gouze's "discriminatory animosity" towards her as a woman was the cause for her termination at Blue Hill, in violation of Title VII.  Complaint at 9.  She claims that defendants' claim of her poor work performance is simply a pretext for their discrimination.  Defendants contend that they terminated plaintiff because she did not perform her work duties satisfactorily and the circumstances surrounding her termination do not give rise to an inference of discrimination.  Defendants also argue that because Gouze both hired and fired plaintiff, plaintiff cannot establish any discriminatory animus.

Title VII forbids an employer from discriminating against an employee or applicant for employment "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Individuals "with supervisory control over a plaintiff may not be held personally liable."  Tomka, 66 F.3d at 1313.  "Title VII 'proscribes not only overt discrimination but also practices that are fair in form, but

discriminatory in operation.'" Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006) (citing Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)).

In the absence of direct evidence of discrimination, courts analyze claims brought under Title VII pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).  Under the McDonnell-Douglas framework, plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination.  See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005).

If the plaintiff establishes her prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions.  See Fisher v. Vassar Coll., 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).  "Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).  In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'"  James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson

13

Plumbing Prods., 530 U.S. 133, 148-49 (2000)).  In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited [age, gender, race or national origin] discrimination occurred."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

In the present case, no party disputes that plaintiff is in a protected class or that she suffered an adverse employment action.  Rather, defendants claim that plaintiff did not perform her job duties at a level befitting a three-star restaurant.  Specifically, defendants contend that plaintiff was rude to customers.  In support of said contention, defendants submit two hand-written comments from customers.  Defendants' Ex. G. Dona Bianco allegedly submitted a comment card on June 5, 2004, stating, "bartender—rude."  Id.  Another customer, Robert, allegedly sent a letter dated September 9, 2004, stating, "Tina as a bartender-server was not hospitable, she was rude and forgot some requests."  Id.  Defendants assert that they terminated plaintiff following a dispute with customers, "for unprofessional and inappropriate behavior towards customers."  Memo. of Law in Support of Defs. Mot. for Sum. Judgment § Contentions (B) [hereinafter "Defendants' Memo"].  Thus, defendants contend that plaintiff's termination cannot give rise to an inference of discrimination.

Plaintiff, however, asserts that defendants' claim of her unsatisfactory work is pretextual because it is untrue.  She contends that she received numerous accolades for her service.  See, e.g., Plaintiff's Ex. 5 (Frank Bruni's New York Times review calls plaintiff "one of many extremely affable servers" at Blue Hill.); Plaintiff's Ex. 6 (Elizabeth Johnson states, "Tina Braunstein shakes a fine rhubarb cosmopolitan" in a Journal

News review of Blue Hill.).  Defendants admit that plaintiff received praise for her bartending and service.  See Defendants' Ex. C, Barber Tr. 53:3-10 (Blue Hill received more positive written comments for Tina's service than negative ones); id. Barber Tr. 57:11-58:19 (Customers complimented plaintiff directly to Barber, but he did not receive any direct negative comments about her.).  Plaintiff further contends that the only time she knew a customer complained negatively about her was when Gouze showed her a customer's letter which was written on blue stationary.  Defendants' Ex. B, Braunstein Tr. 258:17-260:18.  Lastly, plaintiff states that when Gouze terminated her, allegedly because of how she dealt with an irate couple, he would not even discuss the situation with her.  Defendants' Ex. B, Braunstein Tr. 363:11-368:10.

In contrast to plaintiff's allegations, Gouze stated that whenever a server received a negative comment, he would address the situation with the server. Defendants' Ex. D, Gouze Tr. 105:25-106:9.  He said that he would "always try to listen to both sides of the story and try to understand the situation."  Id., Gouze Tr. 106:13-15. Gouze further stated that if a server received two negative comments, he would put her on notice that she was in danger of being terminated.  Id., Gouze Tr. 109:11-22. However, Gouze does not remember if he gave plaintiff such notice.  Id., Gouze Tr. 109:23-110:5.

Given the above, plaintiff has established enough evidence to allow a reasonable juror to find that she performed her job duties satisfactorily.  Defendants' contention that she was consistently rude to customers is weak; they admit they only had two written negative comments, but had several more positive comments in connection with plaintiff's service.  Additionally, plaintiff raises a question of fact regarding these

15

negative comments as she contends she was only made aware of a single one; contrary to Gouze's admitted practice of discussing every negative comment with the alleged offending server.  Also, that Gouze called plaintiff a "bitch" and "diva" when he terminated her, Defendants' Ex. D, Gouze Tr. 160:22-161:16, as well as would say to her that one man could do her job better[2], Defendants' Ex. B, Braunstein Ex. 237:18-21, gives rise to the inference that Gouze terminated her for discriminatory reasons. Furthermore, because plaintiff's evidence supporting her satisfactory job performance undermines defendants' alleged legitimate reason for terminating her, plaintiff has submitted enough evidence to establish that said legitimate reason was pretextual.

Lastly, defendants incorrectly contend that because Gouze both hired and fired plaintiff, plaintiff cannot prove discriminatory animus.  Defendants here invoke the "'same actor' inference, the main thrust of which is that it is difficult to infer that the person who hires an employee in a protected class would 'suddenly develop an aversion to members of that class.'" Copeland v. Rosen, 38 F.Supp.2d 298, 305 (S.D.N.Y. 1999) (citing Ruane v. Continental Cas. Co., No. 96 Civ. 7153, 1998 WL 292103, at *8 (S.D.N.Y. June 3, 1998)).  However, "[t]he 'same actor' inference is not a necessary inference, it is only a plausible one." Id. (citations omitted).  Rather, courts must still engage in "a fact-intensive inquiry into the particular circumstances of the case at hand."  Id. (citations omitted).  As such, considering the facts as discussed above, the plaintiff has submitted sufficient evidence to support her gender discrimination claim. See id. at 306.

─────────────────

[2] The Court notes that Gouze contends he said one "person" could do the job. Defendants' Ex. D, Gouze Tr. 162:4-9.  At this stage, his assertion merely raises a question of fact for the jury to determine.

Thus, for the above reasons, it is respectfully recommended that with respect to plaintiff's gender discrimination claim, defendants' motions should be DENIED.

## VI.  RETALIATION CLAIM

Plaintiff alleges that defendants retaliated against her in violation of Title VII when she complained to Barber that Gouze was harassing her by calling her names and saying that one man could do her job better.  Defendants argue that plaintiff simply told Barber she was unhappy with how Gouze ran the restaurant, which does not rise to protected activity under Title VII.  Defendants also contend that Gouze fired plaintiff because of her poor job performance and disrespect to customers, not because of any retaliatory intent.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).
In order to establish a prima facie case of retaliation, plaintiff must show that (1) she was engaged in a protected activity, (2) her employer was aware of that activity, (3) she suffered an adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action.  See Gregory v. Daly, 243 F.3d 687,700 (2d Cir. 2001).  If a plaintiff establishes her prima facie case of retaliation, defendant must then offer "a legitimate, non-discriminatory reason for the adverse action."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

17

Once defendant proffers this reason, plaintiff must then show that the proffered reason is pretextual.  See id.

Plaintiff alleges she engaged in a protected activity when she complained to Barber that Gouze harassed her because she was a woman.  She asserts that, in early October 2004, she told Barber that Gouze "was being nasty and abusive," called her a "bitch" and "diva," and said that a man would do a better job in her position. Defendants' Ex. B, Braustein Tr. 316:13-317-23, 319:6-14.  Plaintiff alleges that she spoke with Barber again about Gouze's treatment of her on October 14, 2004.  She asserts that she told Barber that Gouze sent her home the night before, calling her a "bitch" and "diva."   She contends that Barber told her to work it out with Gouze.  Id. at 308:1-21.  Subsequent to her conversation with Gouze, plaintiff contends she called Barber on October 15, 2004 to let him know that Gouze responded to her with further discriminatory remarks.  Id. at 340:6-17.  Plaintiff asserts that she told Barber that Gouze made her "uncomfortable" and she reiterated that she considered his actions "harassment."  Id. at 340:6-17.

Plaintiff asserts that defendants were aware that she engaged in said protected activity.  During her early October conversation with Barber, she alleges that Barber told her he understood that she was harassed.  Id. at 324:19-25.  Plaintiff also alleges that Gouze observed her speaking with Barber.  Id. at 326:18-25.  When plaintiff again spoke to Barber on October 15, 2004, she asserts that Barber said, "Don't worry about it.  I am taking care of it."  Id. at 340:16-17.

Plaintiff contends that as a result of her complaints to Barber, Gouze sent her home without pay, positioned her at the service bar, and finally terminated her.  She

18

asserts that said adverse employment actions occurred immediately or closely after she complained to Barber about Gouze's treatment of her.  Specifically, plaintiff alleges that Gouze sent her home from work without pay on October 13, 2004 after he saw her complaining to Barber in early October.  As a result of immediately speaking with Barber of said incident on October 14, 2004, plaintiff contends that Gouze said that he "was going to put a man up [at the front bar] and teach [plaintiff] a lesson."  Id. at 338:13-21. Plaintiff also alleges that Gouze terminated her less than one month after she again complained to Barber on October 15, 2004, and Barber promised to take care of the situation.  Thus, due to the temporal proximity, plaintiff asserts that a causal connection exists between these adverse employment action and her protected activity.  See Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (plaintiff may prove a causal connection by submitting indirect evidence showing that the protected activity was closely followed in time by the adverse action).

Despite plaintiff's assertions, however, defendants contend that plaintiff did not make a complaint regarding gender discrimination or sexual harassment, but merely complained of managerial disagreements with Gouze.  Thus, they argue that plaintiff did not engage in protected activity and defendants were not aware that she engaged in protected activity.  Thus, defendants contend that there is no casual connection between the alleged protected activity and the alleged adverse employment actions. Defendants further contend that they had legitimate, non-discriminatory reasons for the adverse employment actions.  They allege that Gouze sent plaintiff home because she refused to take a wine quiz; she was moved to the service bar at her own request, Defendants' Ex. D, Tr. 179:11-20; and she was terminated because she was rude to

19

customers.

As an initial matter, as stated above, Title VII claims are not actionable against individuals.  Accordingly, plaintiff may only assert a retaliation claim against Blue Hill. Next, although plaintiff asserts that she complained to Barber about alleged Title VII violations, Barber only recalls the details of her complaints to the extent that she complained of disagreements with Gouze.  See, e.g., Defendants' Ex. C, Barber Tr. 93:5-18.  Barber also does not recall that plaintiff told him that Gouze called her a "bitch" or "diva."  Id. at 93:19-24.  See also id. at 95:6-10.  As such, a question of fact exists regarding whether plaintiff engaged in protected activity.

Finally, plaintiff contends that defendants' legitimate reasons for the adverse employment actions are pretextual.  Plaintiff contends that the wine quizzes were "casual" and "grades" did not matter.  Defendants' Ex. B, Braunstein Tr. 282:8-283:16. She also alleges that Gouze only once discussed with her a customer complaint and failed to listen to her side of the story of the customer dispute leading to her discharge, contrary to his standard practice.  See supra § V.  In these incidents, plaintiff asserts that Gouze deviated from standard procedures, either in taking the wine quizzes more seriously than otherwise explained to employees; or not discussing alleged customer disputes immediately with the server s.  Such deviation from standard practice may serve as evidence of pretext, thus allowing plaintiff to withstand summary judgment. Heinemann v. Howe & Rusling, 529 F.Supp.2d 396, 409 (W.D.N.Y. 2008) (citations omitted).

For the above reasons, it is respectfully recommended that with respect to plaintiff's Title VII retaliation claim, defendants' motions should be DENIED.

## V.  NEW YORK HUMAN RIGHTS LAW CLAIMS

Plaintiff makes the same claims under the New York Human Rights Law

("NYHRL") as she does under Title VII.  Complaint at 4.  The NYHRL makes it unlawful

for an employer to discriminate against individual employment applicants and

employees on the basis of "age, race, creed, color, national origin, sexual orientation,

military status, sex, disability, predisposing genetic characteristics, or marital status."

N.Y. Exec. Law § 296(1)(a).  It also forbids employers from "discharg[ing], expel[ling] or

otherwise discriminat[ing] against any person because he or she has opposed any

practices forbidden under this article or because he or she has filed a complaint. . . in

any proceeding under this article."  Id. § 296(1)(e).

Although defendants do not move to dismiss plaintiff's NYHRL claims, the

analysis for said claims is the same for plaintiff's Title VII claims.  Smith v. Xerox Corp.,

196 F.3d 358, 363 n.1 (2d Cir. 1999).  Accordingly, it is respectfully recommended that

plaintiff's NYHRL claims of sexual harassment, gender discrimination, and retaliation

should withstand summary judgment.  Additionally, unlike in Title VII claims, here

individuals can be held personally liable.  Tomka, 66 F.3d at 1313.  Thus, it is

respectfully recommended that plaintiff's claims of sexual harassment, gender

discrimination, and retaliation against defendant Barber should also withstand summary

judgment.

Thus, it is respectfully recommended that with respect to plaintiff's NYHRL

claims, defendants' motions should be DENIED.

## VI.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend that

defendants' motion for summary judgment should be DENIED in full.

## VII. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated:   March   2 7, 2009

White Plains, New York

Respectfully Submitted:

_____
GEORGE A. YANTHIS, U.S.M.J.

22